IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LEE ANDREW
MITCHELL-PENNINGTON,

          Plaintiff,

    v.                       CASE NO.  09-3106-SAC

KENNETH McGOVERN,
et al.,

          Defendants.

## MEMORANDUM AND ORDER

This civil rights complaint, 42 U.S.C. § 1983, was filed by plaintiff when he was confined in the Douglas County Jail, Lawrence, Kansas (DCJ). He has since been transferred to the El Dorado Correctional Facility, El Dorado, Kansas. Plaintiff sues Kenneth McGovern, Sheriff, and Kenneth Massey, Undersheriff, of Douglas County, Kansas, as well as Lt. Wesley Houk, the "operation lieutenant" at the DCJ.

As the factual background for this complaint, Mr. Mitchell-Pennington alleges the following. On April 13, 2009, Sargent Freeman "gave C.O. Ellenburg orders to take (plaintiff) to D-seg." When Ellenburg directed plaintiff to go to D-seg, he grabbed a bag of Skittles and began eating them. Ellenburg told him to stop eating and put down the Skittles, but he did not comply. Ellenburg then ordered his cell opened, told him to "spit it out or get tazed," and pointed a tazer at him. Ellenburg handcuffed him and "pushed (him) violently out (his) cell, down the run, and several times at the stairs. He was in fear for his safety and needed medical and mental treatment for his injuries. When they got to

cell 311B, Ellenburg "tossed" him on his stomach on the bed and called for officer assistance. His arm was very swollen and he was in shock. "About 8 officers" came, put him in a restraint chair, took him to the medical unit for his injuries, and returned him to cell "311B in Max." "The C.O.s" would not allow him to take photos of his injuries[1]. The next day he was placed on "ice treatment" and prescribed Ibuprofen for about a week.

As Count I plaintiff asserts he was denied equal protection of the laws. In support, he alleges first that defendant Sheriff and Undersheriff are responsible to make and train on policy, and the policy and procedures were not carried out. Then he alleges that Ellenburg acted "under orders of administration" and his actions of coming in plaintiff's cell, assaulting plaintiff, and not calling a code when plaintiff was non-compliant show Ellenburg was "improperly trained" in jail policy and procedures.

As Count II, plaintiff asserts he was subjected to excessive force in violation of the Eighth Amendment. In support, he alleges that Ellenburg acted under orders of McGovern, Massey, Houk and Freeman.

As Count III, plaintiff again claims a denial of equal protection. In support, he alleges Ellenburg acted under orders of McGovern, Massey, Houk, and Freeman, and entered his cell without a

---

[1] The only physical injury described by plaintiff is a swollen arm, which his attachments indicate could have resulted from his resistance to handcuffs. It also appears that this injury was treated with ice and Ibuprofen. Plaintiff is advised that he may not recover money damages for mental or emotional injury unless he shows actual physical injury. See 42 U.S.C. § 1997e(e)("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Plaintiff does not state whether the damages he seeks are based upon his alleged physical injury, or his alleged emotional injury, or both.

2

video recorder, which he claims violated a policy to have a video camera when someone is resistive; and that Ellenburg pointed a tazer at him.

Plaintiff alleges that he sought administrative relief. He attaches copies of some "Inmate Grievance Form(s)" and apparent responses as well as some records regarding disciplinary action. The court may consider these attachments as part of the complaint. Plaintiff seeks nominal, punitive and compensatory damages.

**APPLICATION TO PROCEED WITHOUT PREPAYMENT OF FEES**

Plaintiff has filed an Application to Proceed without prepayment of fees (Doc. 2). However, his application is incomplete. 28 U.S.C. § 1915 requires that a prisoner seeking to bring a civil action without prepayment of fees submit, in addition to the affidavit in subsection (a)(1), a "certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing" of the action "obtained from the appropriate official of each prison at which the prisoner is or was confined." 28 U.S.C. § 1915(a)(2). Plaintiff states that he sometimes has money in his inmate account and will "give 20%" of his funds to file this case. Pursuant to statute this court, not plaintiff, determines the amount of an initial partial filing fee based upon the financial information in the inmate's account statement. This action may not proceed until plaintiff has provided the documentation required by statute to support his application. He will be given time to provide this documentation.

**SCREENING**

Because Mr. Mitchell-Pennington is a prisoner, the court is required by statute to screen his complaint and to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief.  28 U.S.C. § 1915A(a) and (b).  Having screened all materials filed, the court finds the complaint is subject to being dismissed for reasons that follow.

**FAILURE TO ALLEGE PERSONAL PARTICIPATION**

An essential element of a civil rights claim for money damages against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based. Trujillo v. Williams, 465 F.3d 1210, 1227 (10th Cir. 2006)(A defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established); Mitchell v. Maynard, 80 F.3d 1433, 1441 (10th Cir. 1996); Olson v. Stotts, 9 F.3d 1475, 1477 (10th Cir. 1993)(affirming district court's dismissal where "plaintiff failed to allege personal participation of the defendants").  "[T]he defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation." Fogarty v. Gallegos, 523 F.3d 1147, 1162 (10th Cir. 2008).  To be held liable under § 1983, a supervisory official must have personally participated or acquiesced in the complained-of constitutional deprivation. Meade v. Grubbs, 841 F.2d 1512, 1528 (10th Cir. 1988).  An "affirmative link" must exist between the constitutional deprivation and "either the supervisor's personal participation, his exercise of control or direction, or his

failure to supervise." Id. at 1527.  This link is satisfied if "a supervisor has established or utilized an unconstitutional policy or custom."  Id. at 1528.

Plaintiff seeks money damages based upon injuries he allegedly sustained as the result of an alleged assault and/or use of excessive force by "C.O. Ellenburg."  The persons he names as defendants are Sheriff McGovern, Undersheriff Massey, and Lt. Houk. None of these individuals is alleged to have actually participated in the incident involving plaintiff and C.O. Ellenburg or to have used excessive force upon plaintiff.  The claimed liability of the named defendants is based only upon plaintiff's conclusory allegations that at the time of the incident they gave Ellenburg orders and were responsible for seeing that jail employees were trained properly and that policies and procedures were carried out at the jail.  However, none of the named defendants is alleged to have ordered Ellenburg to use excessive force in the incident with plaintiff.  Plaintiff does not describe any particular unconstitutional policy or custom as having been established by the named defendants.  Nor does plaintiff allege facts showing that any particular employee training had not been implemented at the jail. The only specific policy alleged to have been violated was one on using video equipment, and the alleged violation was by Ellenburg.

The court finds from the foregoing that plaintiff has not alleged sufficient facts to show a nexus between the alleged unconstitutional acts upon which the complaint is based and any actions of the named defendants.  Plaintiff is given time to show cause why this action should not be dismissed on account of his failure to allege the personal participation of the named defendants

5

in the complained-of incident. If plaintiff fails to comply with the court's orders in the time allotted, this action may be dismissed without further notice.

**FAILURE TO STATE CLAIM OF DENIAL OF EQUAL PROTECTION**

"Equal protection is essentially a direction that all persons similarly situated should be treated alike." Grace United Methodist Church v. City of Cheyenne, 451 F.3d 643, 659 (10th Cir. 2006)(citing City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)); Riddle v. Mondragon, 83 F.3d 1197, 1207 (10th Cir. 1996). Plaintiff fails to allege any facts, and does not even claim, that he was treated differently from other similarly-situated inmates. Fogle v. Pierson, 435 F.3d 1252, 1261 (10th Cir. 2006); Barney v. Pulsipher, 143 F.3d 1299, 1312 (10th Cir. 1998). Thus, no equal protection claim is stated.

**FAILURE TO STATE CLAIM OF EXCESSIVE FORCE**

Court's generally analyze a convicted prisoner's claim of excessive force under the Eighth Amendment's cruel and unusual punishment clause[2]. In Whitley v. Albers, 475 U.S. 312 (1986), the United States Supreme Court stated that "[a]fter incarceration, only the 'unnecessary and wanton infliction of pain' . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment (citations omitted)." Id. at 319. The Court in Whitley held that in considering excessive force claims, a court must determine

---

[2] The Eighth Amendment is applicable to the states through the Fourteenth Amendment's due process clause, and proscribes the infliction of cruel and unusual punishment.

6

"whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm (citations omitted)."  Id. at 320-21. Relevant factors to be considered in making this determination include (1) the need for the application of force; (2) the relationship between the need and amount of force used; and (3) the extent of injury inflicted.  Id.; see also Smith v. Cochran, 339 F.3d 1205, 1212 (10th Cir. 2003).  In Sampley v. Ruettgers, 704 F.2d 491 (10th Cir. 1983), the Tenth Circuit Court of Appeals set forth three factors for courts to include in their review of excessive force claims[3].  Under Sampley, the inmate must demonstrate (1) the guard intended to harm the prisoner; (2) the guard used more force than reasonably necessary to maintain or restore institutional order; and (3) the guard's actions caused severe pain or lasting injury to the prisoner.  Id. at 495; Norton v. The City of Marietta, OK, 432 F.3d 1145, 1154 (10th Cir. 2005).

The standards are "sensitive to the highly-charged prison environment."  See e.g., Sampley, 704 F.2d at 496 (A court should also bear in mind that a prison guard, to maintain control of inmates, must often make instantaneous, on-the-spot decisions

---

[3]   In Sampley, the Tenth Circuit instructed:

A prison guard's use of force against an inmate is "cruel and unusual" only if it involves "the unnecessary and wanton infliction of pain."  Gregg v. Georgia, 428 U.S. 153, 173 (1976).  We think that this standard imposes three requirements for an inmate to state a cause of action under the eighth amendment and section 1983 for an attack by a prison guard.  First, "wanton" requires that the guard have intended to harm the inmate.  Second, "unnecessary" requires the force used to have been more than appeared reasonably necessary at the time of the use of force to maintain or restore discipline. Third, "pain" means more than momentary discomfort; the attack must have resulted in either severe pain or a lasting injury.

Id. at 495.

7

concerning the need to apply force without having to second-guess himself.)(citing see Wolff v. McDonnell, 418 U.S. 539, 566-67 (1974)). Thus, it has been plainly held that not every isolated battery or injury to an inmate amounts to a federal constitutional violation. See Hudson v. McMillian, 503 U.S. 1, 9 (1992)(Not "every malevolent touch by a prison guard gives rise to a federal cause of action."); El'Amin v. Pearce, 750 F.2d 829, 831 (10th Cir. 1984)(While an assault by a jailer on his prisoner can give rise to an action under section 1983, a jailer's use of force against a prisoner is not always a constitutional violation.); see also George v. Evans, 633 F.2d 413, 416 (5th Cir. 1980)("A single unauthorized assault by a guard does not constitute cruel and unusual punishment."). A prison guard's use of force is entitled to deference by the courts because their decisions are made "in haste, under pressure, and frequently without the luxury of a second chance." Hudson, 503 U.S. at 6; Whitley, 475 U.S. at 320. Courts have repeatedly quoted Judge Friendly's opinion in Johnson v. Glick:

> Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.

Johnson v. Glick, 481 F.2d 1029, 1033 (2d Cir.), cert. denied sub nom Employee-Officer John v. Johnson, 414 U.S. 1033 (1973. As the United States Supreme Court held in Baker v. McCollan, 443 U.S. 137, 146 (1979):

> Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law. Remedy for the latter type of injury must be sought in state court under traditional tort-law principles.

Id.

Considering the facts alleged by plaintiff in his complaint

8

under the foregoing standards, the court finds that, even accepting plaintiff's factual allegations as true, they are insufficient to state a violation of the Eighth Amendment.  Plaintiff's own exhibits and allegations indicate he was being uncooperative and disruptive at the time of the incident.  His exhibits also suggest he disobeyed orders, and was disciplined as a result of his behavior.  His actions were clearly contrary to the legitimate penological interest of maintaining control and discipline in the prison facility. Under such circumstances, the use of some physical force can hardly be considered repugnant to the conscience of mankind.  Nor do any circumstances described suggest that the force applied was for the very purpose of maliciously and sadistically causing him harm rather than to restore order, or was so harmful as to be cruel and unusual. On the contrary, the facts alleged by plaintiff suggest that force was applied in an "effort to maintain or restore discipline."

In order for plaintiff to elevate his allegations to a federal constitutional violation cognizable in federal court, he must provide additional facts that support a constitutional claim of excessive force.  Plaintiff will be given time to submit a "Supplement to Complaint" in this case containing additional facts to support a claim of federal constitutional violation in accord with the foregoing Order.  If he fails to submit a "Supplement to Complaint" within the time allotted by the court, this action may be dismissed without prejudice and without further notice.

**IT IS THEREFORE ORDERED** that plaintiff is granted thirty (30) days in which to submit to the court a "certified copy of (his) trust fund account statement (or institutional equivalent)" for "the

9

6-month period immediately preceding the filing" of this action "obtained from the appropriate official of the (jail) at which the prisoner is or was confined."

**IT IS FURTHER ORDERED** that within the same thirty-day period, plaintiff must show cause why this action should not be dismissed for the reasons set forth in this Memorandum and Order.

**IT IS SO ORDERED.**

Dated this 6th day of July, 2009, at Topeka, Kansas.

s/Sam A. Crow
U. S. Senior District Judge